UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**DENIS KOKIC**, individually and on behalf of all similarly situated individuals,

    Plaintiff,

vs.

**ASPIRE BUSINESS SERVICES, LLC,** d/b/a **AMERICAN FOOD SERVICES**; and **RAJU NAKUM**,

    Defendants.

Hon.
Case No. 2:19-cv-11888

**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

## COLLECTIVE ACTION COMPLAINT

1. Plaintiff and similarly situated hourly employees worked for Defendants' pizza franchise selling, making, and delivering pizzas. Because of Defendants' willful violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and the Michigan Workforce Opportunity Wage Act ("WOWA"), Mich. Comp. Laws §§ 408.411–408.424 (2014), Plaintiff and those similarly situated were deprived of the lawful minimum wages and overtime premiums they were entitled to receive.

2. Sometimes Plaintiff worked as a delivery driver ("delivery work" or "delivery hours"). Sometimes he worked in the store making pizzas, checking out customers at the register, and performing other in-store tasks ("in-store work" or "in-

store hours"). He often performed both delivery work and in-store work in the same shift. This was common in Defendants' business operation, and Defendants had different wage rates for in-store and delivery work built into their time-keeping system to accommodate this practice.

3. As a matter of standard business practice, Defendants Aspire Business Services, LLC ("Aspire"), d/b/a American Food Services ("AFS"), and Raju Nakum ("Nakum") (collectively, "Defendants") fail to pay their hourly employees legal minimum wages and overtime premiums. They willfully and repeatedly flout the FLSA and the WOWA by requiring employees to perform untipped work at tip-credit wages, keeping in-store tips that should go to the employees who earned them, and "rolling" overtime hours across consecutive workweeks to avoid paying overtime premiums as required by the FLSA.

4. This is a collective FLSA action brought by one of the employees injured by Defendants' wage violations, Plaintiff Denis Kokic ("Plaintiff"). He is suing on behalf of himself and all those similarly situated for Defendants' illegal wage practices.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's FLSA claim raises a federal question. A lawsuit for violation of

29 U.S.C. §§ 206 - 207 "may be maintained against any employer … in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as Plaintiff's federal claims.

7. This Court has personal jurisdiction over Defendants because they each reside and systematically conduct business in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(1) because all Defendants reside in this District; additionally, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff Denis Kokic is an individual who resides in Shelby Township, Michigan. Within the last three years, Plaintiff has worked for Defendants as an hourly employee. Plaintiff Kokic has executed his consent-to-join form. ***Exhibit A***.

10. Defendants operate as a Papa John's Pizza franchise primarily engaged in selling and serving prepared food and beverages for consumption on or off the premises. During the relevant time period, the franchise was owned and operated by Defendant Aspire, doing business as AFS.

11. Defendant Aspire is a Michigan limited liability company whose registered address is 1962 S. Rochester Road, Rochester Hills, Michigan 48307. Aspire does business as AFS in the city of Rochester Hills, County of Oakland.

12. Defendant Raju Nakum is a Michigan resident. Upon information and belief, he is a member of Aspire, owns the pizza franchise, and manages operations and employees, including Plaintiff.

## GENERAL ALLEGATIONS

13. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

14. At all relevant times, the federal minimum wage was $7.25 per hour.

15. At all times relevant to this action, Michigan's minimum wage was higher than the federal minimum wage: $8.50 for 2016; $8.90 for 2017; $9.25 for 2018 (Mich. Comp. Laws § 408.414 (2014)); and $9.45 for 2019 (Pub. Act No. 368 of 2018).

16. Defendants were Plaintiff's employers, as defined by the FLSA, 29 U.S.C. § 203(d), approximately from July 2017 through April 2018.

17. Defendants' pay practices and policies are illegal in several respects: (1) Defendants improperly paid Plaintiff a tip-credit wage for delivery work without informing him in advance of Defendants' use of the tip-credit wage, in violation of 29 CFR § 531.59(b); (2) usually, Defendants required Plaintiff to clock in for

untipped in-store work at the tip-credit wage they paid him for delivery work; and (3) Defendants rolled Plaintiff's occasional overtime hours into the next workweek as straight time to avoid paying overtime premiums.

18. To track Plaintiff's working hours, Defendants used a computerized time-keeping system that was integrated into the point-of-sale system.

19. The time-keeping system was designed to track delivery hours, which are tipped work to be paid at a tip-credit wage, and in-store hours, which are untipped work to be paid at the Michigan minimum wage. Ideally, it would work as follows: when an employee left the store to do delivery work, the employee would clock out of the in-store wage rate and clock in to the delivery wage rate; then, upon returning to the store and resuming in-store work, the employee would clock out of the delivery wage rate and clock in to the in-store wage rate.

20. But, in reality, Defendant Nakum usually required Plaintiff and those similarly situated to clock in for in-store work as if it were delivery work. Defendants' employees were "tipped employees" under the FLSA only when acting as delivery drivers, in which activity they customarily and regularly received more than $30 a month in tips. 29 U.S.C. § 203(t). But when acting as "in-store" employees (making pizzas, stocking and cleaning the premises, and running the cash register), they were not subject to receiving tips in an amount that would qualify them as "tipped employees" for FLSA purposes.

21. As a result, Defendants paid illegal, sub-minimum, tip-credit wages for untipped in-store work. Only when Defendants were short-staffed and needed to entice Plaintiff and those similarly situated to take additional in-store hours did Defendant Nakum offer to allow employees to clock in and be paid at the in-store wage rate for in-store work, demonstrating that Defendants willfully and knowingly avoided the wage laws.

22. When Plaintiff and those similarly situated worked more than forty hours in one workweek, Defendants simply rolled any overtime hours into the next workweek as straight time. They used this illegal practice to avoid paying overtime premiums.

23. Overtime rolling is not apparent on the face of paystubs. Excess hours from one week can be rolled into the next without creating documentary evidence of the overtime violations. Discovery into the login and logout times captured by Defendants' time-keeping system likely will show when overtime rolling took place and how much money employees lost due to the violations.

24. Defendants knew or should have known that Plaintiff and all similarly situated hourly employees are entitled to minimum wage and overtime pay in accordance with the FLSA and the WOWA.

25. Most in-store hours appear on employees' paystubs as delivery work being paid at delivery rates, so the violations are not immediately apparent on the paystubs. ***Exhibit B***, sample of Kokic paystubs.

26. For example, Plaintiff's paystubs show that he worked zero in-store hours during these pay periods: 1/1/18–1/14/18 (Exh. B, at 3); 1/29/18–2/11/18 (*id.*, at 4); 2/26/18–3/11/18 (*id.*, at 5); and 3/12/18–3/25/18 (*id.*, at 6). However, to the best of Plaintiff's recollection, he did perform in-store work during one or more of these pay periods, but the in-store work was labeled and paid as "driver" work on his paystubs. Because Defendants purposefully obscured the true nature of most in-store work on employee paystubs, discovery will be required to shed light on which delivery hours on Plaintiff's paystubs reflect actual delivery hours versus underpaid in-store hours.

27. Despite the misleading paystubs Defendants issued, their violations can be proven with the benefit of discovery. Defendants are required by federal and state law to maintain detailed records of hours worked by and wages paid to Plaintiff and other employees.

28. Defendants' violations invariably inured to Defendants' benefit.

29. As a result of Defendants' wage violations, Defendants systematically underpaid their hourly employees, including Plaintiff, during the relevant time period and were unjustly enriched by doing so.

30. Defendants' wage violations resulted in Plaintiff and those similarly situated being denied substantial compensation due for work performed for Defendants. This unpaid work is not *de minimis*.

## COLLECTIVE ACTION ALLEGATIONS

31. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

32. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of a class of all those similarly situated, defined as follows:

> *all hourly workers employed by Defendants at any time within the three years preceding the date this Complaint was filed.*

33. At all times relevant to this action, each Defendant is/was an "employer" under 29 U.S.C. § 203(d) of the FLSA, subject to the FLSA's provisions, including the minimum-wage requirement set forth in 29 U.S.C. § 206(a). Defendants "suffered or permitted" Plaintiff and all similarly situated current and former hourly employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

34. The FLSA contemplates an employee having multiple employers for purposes of complying with the FLSA's minimum wage and overtime requirements. In addition to acting in his own behalf as an employer, Defendant Nakum acted directly or indirectly in the interest of employer Aspire in relation to Aspire's

employees, including Plaintiff and those similarly situated, and thus Defendant Nakum is an "employer" pursuant to 29 U.S.C. § 203(d).

35. Defendant Nakum set work schedules, determined wage rates, had hiring and firing authority, and devised and implemented the illegal employee compensation schemes which injured Plaintiff and those similarly situated.

36. Upon information and belief, Defendants' annual revenues exceed $500,000.00, Defendants are engaged in commerce and in the production of goods for commerce, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis. 29 U.S.C. § 203(s).

37. Plaintiff and those similarly situated either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce. Thus, Plaintiff and putative class members are also covered by the FLSA on an individual basis.

38. At all times relevant to this action, Plaintiff and those similarly situated were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

39. Upon information and belief, Defendants committed the wage violations described above against every hourly employee in every pay period.

40. The job duties performed by each putative class member are similar to Plaintiff's, and each putative class member was similarly damaged by Defendants'

9

wage-theft schemes as detailed above. Although the hours worked by individual class members and the exact wages they were paid may differ, putative class members are situated similarly to Plaintiff with respect to Defendants' minimum-wage and overtime pay violations.

41. Plaintiff and those similarly situated, by virtue of their job duties and activities actually performed, are all non-exempt employees.

42. Defendants' FLSA violations were knowing and willful such that the statute of limitations should equal the maximum period of three years, pursuant to 29 U.S.C. § 255(a).

43. Plaintiff and those similarly situated consistently were undercompensated for their in-store time, and they sometimes worked for Defendants for over forty hours per week but did not receive overtime premiums.

44. Defendants knew Plaintiff and those similarly situated sometimes worked over forty hours per week without overtime premiums because Defendants assigned the work schedule and job duties and maintained the time-tracking system.

45. The knowing and willful nature of these violations is demonstrated by the deceitful scheme Defendants used to label most in-store hours as delivery hours, thereby hiding their wage violations from the face of employee paystubs.

46. Defendants' FLSA violations were not good-faith errors but purposefully chosen business practices and procedures, devised and implemented by

Defendant Nakum, and knowingly adopted, approved, and ratified by Defendants to increase their profits and gain an unfair advantage over competitors in the industry who comply with wage laws. Accordingly, a full award of liquidated damages is appropriate under the FLSA. 29 U.S.C. §§ 216(b) & 260.

47. The number of class members and their identities should be readily discernible from a review of Defendants' personnel and payroll records.

### COUNT ONE
### (Collective Action)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 206(a)
### FAILURE TO PAY MINIMUM WAGE

48. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

49. The FLSA provides for a credit from employer's pay responsibility for employees who receive gratuity or gifts from customers in recognition of some services performed. This credit is commonly referred to as a "tip credit," and the resulting wage a "tip-credit wage."

50. For an employer to pay a lawful tip-credit wage, the employee must meet the FLSA definition of a tipped employee, the employer must inform the employee for whom the credit is claimed before it is taken, and the employer must allow the employee to retain all tips received.

51. Defendants failed to comply with the FLSA and 29 C.F.R. § 531.56(e), by employing Plaintiff and those similarly situated in dual jobs—one of which is tipped work (i.e., delivery driving) and one of which is untipped work (i.e., cooking pizzas)—yet paying a tip-credit wage for most of the in-store time.

52. Defendants did not meet the tip-credit requirements of 29 U.S.C. § 203(m)(2)(A)(ii), even when employees were driving deliveries, because Plaintiff and those similarly situated were not informed of Defendants' application of the tip credit to their wages.

53. Defendants failed to follow Department of Labor regulations, which require employers, in advance of taking the tip credit, to inform the tipped employee of the following: (1) the amount of cash wage the employer is paying a tipped employee; (2) the additional amount claimed by the employer as a tip credit; (3) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee; (4) that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips (which is not present here); and (5) that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip-credit provisions. 29 C.F.R. § 531.59(b), as summarized by United States Department of Labor, Wage and Hour Division, in Fact Sheet #15, *Tipped Employees Under the FLSA*.

54. These violations resulted in sub-minimum wages being paid to employees for in-store work.

55. The FLSA, 29 U.S.C. § 216(b), provides that, as a remedy for a violation of the Act, employees are entitled to the amount of their unpaid minimum wages, plus an additional equal amount as liquidated damages, as well as costs and reasonable attorneys' fees.

**COUNT TWO**
**(Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 207**
**FAILURE TO PAY OVERTIME**

56. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

57. The FLSA requires an employer to pay employees an overtime premium rate of one-and-one-half times their regular rate of pay for every hour worked in excess of forty hours per workweek.

58. In workweeks in which Plaintiff and other hourly employees worked forty hours or more, all overtime should have been paid at the federally mandated rate of one and one-half times each employee's regularly hourly wage. 29 U.S.C. § 207. Defendants' time-rolling practices deprived Plaintiff and those similarly situated from their lawful overtime premium pay.

59. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime plus an additional equal amount in liquidated damages (double damages), as well as costs and reasonable attorneys' fees.

## COUNT THREE
### VIOLATION OF THE WORKFORCE OPPORTUNITY WAGE ACT
### Mich. Comp. Laws §§ 408.414 and 408.414d
### FAILURE TO PAY MINIMUM WAGE

60. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

61. At all relevant times, Defendants were "employers" as defined in Mich. Comp. Laws § 408.412(d) and subject to the minimum-wage and tip-credit requirements at §§ 408.414 and 408.414d, respectively.

62. At all relevant times, Plaintiff and putative class members were "employee[s]" of Defendants as defined in Mich. Comp. Laws § 408.412(c).

63. Because the Michigan minimum wage was higher than the federal minimum wage at all relevant times, the WOWA is not pre-empted by the FLSA to the extent WOWA guarantees a higher minimum wage than the FLSA.

64. Defendants violated the WOWA by failing to pay Plaintiff and putative class members a lawful minimum wage as required by the Act. Mich. Comp. Laws §§ 408.413. (2014); Mich. Comp. Laws § 408.384 (2014).

65. Defendants paid Plaintiff and putative class members $5.50 for hours worked as delivery drivers and most in-store hours, which were intentionally mislabeled as delivery hours on employee paychecks.

66. Mich. Comp. Laws § 408.414d (2014) provides that employers may deduct gratuities from employees receiving gratuities *only* if all the following occur: (a) the employee receives gratuities in the course of his or her employment; (b) if the gratuities and wage that the employer pays equals the minimum hourly wage rate, and, if not, the employer pays the shortfall; (c) the gratuities are proven gratuities as indicated by the employee's declaration for purposes of the federal insurance contributions act, 26 U.S.C. §§ 3101 to 3128, and (d) the employee was informed by the employer of the provision of this section.

67. Defendants' practice of paying a tip-credit wage to employees without their "full, free, and written consent…obtained without intimidation or fear of discharge" also violates Michigan state law. Mich. Comp. Laws § 408.477(1).

68. Defendants' violations of the WOWA were knowing and willful.

69. Under Mich. Comp. Laws § 408.419 (2014), Plaintiff is entitled to recover "the difference between the amount paid and the amount that, but for the violation, would have been paid the employee under this act and an equal additional amount as liquidated damages together with costs and reasonable attorneys' fees as are allowed by the Court."

## COUNT FOUR
## BREACH OF CONTRACT

70. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

71. When Defendant hired Plaintiff, an implied-in-law contract was formed: in exchange for Plaintiff's labor, Defendants would act as lawful employers and pay lawful wages.

72. Plaintiff performed under the contract by completing the duties Defendants required.

73. By not paying a lawful minimum wage and overtime premiums, Defendants breached their contract with Plaintiff.

74. As a direct and proximate result of Defendants' breach of the contract alleged herein, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT FIVE
## UNJUST ENRICHMENT/*QUANTUM MERUIT*

75. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

76. At all times relevant to this action, Plaintiff conferred a benefit on Defendants because Plaintiff performed valuable labor for Defendants.

77. Defendants knowingly and voluntarily accepted and retained the benefit of Plaintiff's labor, and were thereby unjustly enriched, while engaging in

the illegal compensation policies and practices described above, to Plaintiff's detriment.

78. In addition to injuring Plaintiff, Defendants' illegal pay practices gave them an unfair advantage over competitors in the industry who compensate their employees lawfully.

79. Allowing Defendants to maintain the profits of undercompensating Plaintiff is inequitable. Justice demands that Defendants be ordered to disgorge these ill-gotten benefits and that Plaintiff receive the fair value of the labor he performed.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court award the following relief:

A. Certification of this case as a collective action under 29 U.S.C. § 216(b) with respect to the FLSA claims in Counts One and Two;

B. Designation of Plaintiff Kokic as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C. An order (1) directing Defendants to disclose the names and contact information of all hourly employees they employed within the three-year

Class Period, and (2) permitting Plaintiff to send and publish notice of this action to those individuals;

D. Judgment against Defendants, jointly and severally, on all counts;

E. A finding that Defendants' conduct was willful, such that the FLSA statute of limitations should be three years, and not undertaken in good faith, such that liquidated damages are appropriate;

F. All unpaid minimum and overtime wages with an equal amount as liquidated damages as per applicable laws;

G. Costs and attorney's fees;

H. Pre- and post-judgment interest; and

I. Any further relief the Court may deem just or equitable.

Respectfully submitted,

/s/ *Amy L. Marino*
Amy Marino (P76998)
Marino Law, PLLC
18977 W. Ten Mile Rd., Ste. 100E
Southfield, MI 48075
(248) 797-9944
amy@marinopllc.com

*Attorney for Plaintiff and the Putative Class*

Dated: June 25, 2019